Thank you very much. John Lambros for the petitioner appellant, Mr. Christopher Little. I would like to reserve one minute of my time, if possible, for rebuttal argument. If you can, you will. Thank you very much. This is a section 2254 action sounding under the Equal Protection Clause, the 14th Amendment. The lower court conceded and did indeed find that Mr. Little belonged to a definable class with the other litigants that are going to be important to the discussion today, Mr. Meyer, Mr. F. Swegan, and Mr. Skinner. In effect, defendants Point that mic at your mouth. Oh, I'm sorry. Sure. Is that better? Defendants that have entered guilty pleas to the nonprobable offense of sexual assault in the state of Nevada. Therefore, the question presented, the essential question presented today is whether the disparate treatment of Mr. Little, juxtaposed to Mr. Meyer, F. Swegan, and Mr. Skinner, was rational, whether or not it was arbitrary or whether or not it was related to some legitimate or rational government. The state Supreme Court, just like any other court of ultimate jurisdiction, has authority to reconsider its own precedents. You know, we know the Supreme Court of the United States has done that from time to time. I agree. And sometimes it can consider a point of view, tack one way and then tack the other way. And in a sense, if you look at the series of cases where the court explicitly overruled itself and explicitly overruled itself again, you could say, well, these people are not a similar situation, but they're treated differently. Even in a situation where the court just overruled its own precedent to begin with, let's say it gets defendant or party A in one situation and one year it decides one way, and then let's say the very following year the composition of the court changes or they go to judge's school and get great enlightenment and, you know, whatever, and then they get exactly the same question in another case the very next year, and then, you know, one or more of the justices says, well, you know, I've seen the light. I now think we were wrong in, you know, they get B's case and they say we were wrong in A's case. Well, the two people were treated differently. It doesn't do A any good. It's a bitter vindication for poor A, who's still in prison, that in B's case they said, gee, we were wrong there. But that has never been a basis for saying A was denied equal protection or he gets... No, I completely agree with everything you're saying. My point is that's not what I'm talking about. What I'm talking about, using your hypothetical, would be where, let's say, prisoner A or litigant A being Mr. Meyer and Mr. Aswegan. When they went, when they challenged their guilty pleas, the law of the land in the state of Nevada between 1979 and 1985 was that the defendant must be informed on the record that probation was not available to a person convicted of sexual assault. That was, that was the rule in Mr. Aswegan's case. I know Mr. Aswegan... But there's nothing in the Aswegan decision that says that Aswegan was told that he would have to serve 10 years in prison no matter what. No, there was not. As happened with Mr. Little. But if context is everything here, and when this occurred is critical to the equal protection argument, I was, as luck would have it or chance would have it, I was Mr. Aswegan's lawyer in 1985. And it is a very brief opinion. But the opinion stands for the proposition that the defendant must be informed on the record that probation was not available to the defendant. But how do you inform him? I mean, one way to say it is to say you can't get probation. Another, another way to say it is you're going to have to go to prison for 10 years as a bare minimum no matter what. But, but the problem with that is that it, that does not serve as a rationale if you look at the Skinner decision. Because now you have, if you fast forward... Okay, but let's suppose you're correct. I mean, but that's how courts distinguish cases and how the law evolves. But, but the court cannot ignore its own rule. The court cannot give Mr. Skinner in 1997 the benefit it denied Mr. Little in 1990. Mr. Skinner's case is identical to your hypothetical, Judge Silverman. Mr. Skinner was told... No, Skinner was told that if you go to prison, you're going to have to serve at least five years. And the Nevada Supreme Court... If you go to, if you go to prison, it, if you don't go to, they never, they never explained that it's possible that you might not go to prison. Little was specifically told you have to go to prison and you have to go for at least 10 years. No, he was not, I, I disagree with that. The change of plea transcript does not say that. Who's? Little's? Little's. The, the judge didn't tell him as a bare minimum you're going to have to do 10 years? The change of plea transcript is identical to what was told Mr. Skinner in, in Mr. Skinner's plea memo. And that was that you, that this, this sentence, this crime carries a minimum sentence of, in Mr. Little's case, 10 years, in Mr. Skinner's case, five years. It said no more than that. It did not say, and with all due respect, the change of plea transcript in Christopher Little's case did not say what, what, what you have characterized it as saying. It said no more than what it said in Mr. Skinner's case, which, which makes, which makes his disparate treatment... You know, I wasn't the same impression that, in fact, in Little's case, it said, go ahead. Okay. I think it's always good to, yeah, maybe we should, it's important to, to get this squared away. I had the impression it said you will serve at least 10 years in prison. Go ahead. And this is from the, my excerpts at pages 352 and 353. The court starts out, do you, do you understand what the range of, of punishment is? Little says yes. What is it? Little says it's 10 years to life. Then the, then the district attorney interrupts and, and talks about that not being quite correct because there were two counts that he was pleading guilty to. This is the district attorney. Your Honor, that's incorrect. The penalties for sex assault with a minor is life sentence provided by statute. Eligibility for parole does not begin until a minimum of 10 years has been served. Those two sentences, they could run consecutively, so he could serve, says here, the enhancement comes to the regular sentence. The penalty for sexual assault is five to life. That was Mr. Reich, or Mr. Skinner's situation. You know, you're not doing yourself a favor by skipping around. I'm sorry. And you're not giving us line numbers when you're skipping around. I'm sorry. So it makes it very difficult to follow what you're saying. Okay, excerpts of record at, I'm sorry, I'm trying to. Page 353 are excerpts of record. Yes, sir. And I thought you were reading, starting somewhere around lines four or five. Lines four. And then you started skipping around and I, and you lost me completely. I apologize. I'm just trying to. Don't worry about the clock. Okay. We'll just. Okay. All right. Let's try to get this. Lines four, really the critical lines four are lines four until the end, where the district attorney clarifies the situation for the court and tells the court that eligibility for parole at line six does not begin until a minimum of 10 years has been served, and those two sentences for counts one and four could run consecutive. And then again at lines 12 through 16, the enhancement comes when it's 10 years. The regular sexual assault is five to life. Sexual assault with a minor is a life sentence, and you have to serve 10 years before you can apply for parole. And then the court says, so that could be a minimum of 20 years, a minimum of 20 years. Do you understand that? And then the district attorney, that's right, on two life sentences. And then the court asks Mr. Little, do you understand that? And then Mr. Little says, yes, your honor. I was also under the impression that he talks about whether or not these two sentences could run concurrent. So with all due respect, Judge Silverman, I think that's a critical difference to the way that you characterized what it was that Mr. Little was told at the change of plea. So as you read this, this says if you go to prison, you must serve a minimum of 10 years. Right. Right. Just so I understand. Yeah. And that's why I think that's a dramatic divergence from the rule as it existed then in 1990. The rule was, and again I hearken back to S. Wiegand, I know it's not a very long opinion, but the rule is what it is, and that is the defendant must be informed on the record that probation is not available to a person convicted of sexual assault. It was as the Nevada Supreme Court finally in 2001, without giving me oral argument in a per curiam published opinion overruling almost 20 years of case, or 22 years of case law, finally said, look, you know, we've got to reconcile this. And to the extent that there's confusion about this per se rule, S. Wiegand-Meyer, it is overruled. They said that twice in the Little decision. We overrule Meyer and S. Wiegand. And they did that because the rule was, because they went, as you said earlier, Judge Kaczynski, they decided to go in a different direction. Okay. Counsel, if I could interrupt for just a second. What about the Bryant case that was decided in 1986 that said that he looked at the totality of the circumstances? Right. Bryant, if you read Bryant carefully, Judge Benitez, what Bryant says is, and it specifically limits itself, if you read footnote one, the Bryant court specifically limits itself to a case in which the nature of the charges is the only question that is presented. In other words, it's not a range of punishment case. That's at footnote one. So Bryant reserves that question. Bryant does not even discuss Meyer or S. Wiegand. I agree. If the Nevada Supreme Court had chosen to reconcile and overrule or modify the Meyer and S. Wiegand line of cases, dealing with range of punishment, they could have specifically done that. But when they dropped that footnote and they said, we're in, this case deals with nature of charges only, what they were saying, by inference obviously, not expressly, is that they were not dealing with the question that we're dealing with today. So Bryant does not apposite. It has nothing to do with this case. Are we under AEDPA? I'm sorry? I didn't understand. Under AEDPA, yes we are. Yes, this is an AEDPA case. Yes, we are. Yes, sir. And so, assuming we see something here that looks like an equal protection violation, assuming that. Hopefully we'll get there. No, no, I'm just trying to move the discussion onto a different stage of analysis. Yes, sir. We would have, you agree, we would have to say that what the Nevada Supreme Court here contravened established constitutional precedent as announced by the Supreme Court. Yes. I'm just telling you, I'm just articulating the AEDPA standard, right? Yes, right. We are agreed that that's why, if we were to write an opinion ruling in your favor, that's what we'd have to say. I agree. Happened here. And what would that Supreme Court case be that we would be saying announced the said rule? Well, as I. That the Nevada Supreme Court violated here. As I said in my opening brief, the line of cases that this court, that I cited from this court, beginning with Johnson v. Arizona and Myers v. Ilst, Johnson specifically cites to Reed v. Reed, the United States Supreme Court case. I remember Reed v. Reed well. The Idaho Supreme Court case involving the question of whether or not a preference for male heirs as administrators of a state. Correct. So if a male and a female heir were in the same position in terms of being, having a claim to their state, the male would have a preference to be administrator. Correct. And the Supreme Court said on its face it's a violation of equal protection. Now, I have a hard time extrapolating from that a clear rule that the Nevada Supreme Court here violated. You have to filter that through Myers v. Ilst. Yes. I was rather taken with a dissent in Myers myself. I thought you might be. I thought it was really very persuasive. Mostly on procedural grounds, though. Once you reached, you did in fact reach the equal protection question, ultimately. It was a brilliant dissent. But the, we have to filter it through that. I agree. And you don't think we'd be laughed at to take a case involving administration of a state and craft from it or derive from it a clear rule of constitutional law having to, which would say essentially that state Supreme Court or state courts of ultimate jurisdiction, you know, the highest state court, whatever it calls itself or whatever it is called, does not have the authority to change positions? Well, I don't think you would be laughed at because you've done it. The court did it in Johnson v. Arizona 33 years ago. You imported Reed v. Reed into an analysis almost identical to the one. We can't rely on our, I mean, that was our interpretation of Reed. And we could all look at this and say, gee, that's a very good interpretation of Reed. In fact, that is the best reading of Reed. But we'd have to go a big giant step further beyond that and say, and furthermore, in coming out differently, Nevada Supreme Court was irrational. It could not have read Reed v. Reed as creating any other rule. That's really what we'd have to say. Right. And the rule in Reed, just like the rule in any rational relationship test, is the rule that you cited to, the court cited to in Johnson. And then if the application chosen does not have some rational basis announced with reasonable precision so that the rule may be generally known and its results forecast, it will offend the Equal Protection Clause of the 14th Amendment. That's what I'm talking about. And quite frankly, there is no rational reason for why it is Little was treated differently than. You have a better case than that much more recently. Which, I'm sorry, I don't know which case that would be. Bush v. Gore, of course. Well, I was, I thought that, I think I remember being admonished, maybe it was by you once, a few years ago, that that case should not be cited only for that one particular case. But yes, I cited Bush v. Gore to the lower court and city of Willowbrook. But I do believe that. I mean, Bush v. Gore actually has to do with judicial decision-making. Correct. And state court decision-making has to do with rules adopted by the Supreme Court that decides it's okay to treat different litigants in exactly the same position by different sets of rules. Precisely. You know, however the court chooses to get there, I would. Don't care, right? No. I would just urge the court to get there. I really cannot. Nobody's ever explained to me a rational reason why Little was treated differently. And thank you. I appreciate the extra time. Why don't we hear from the state? Good morning. Vic Schulze from the Attorney General's Office in Las Vegas. I think the Bryant case is an important case in this entire line because it was decided three and a half or four years prior to the plea was taken in this case. Bryant came down in 1986. The plea in this case was taken in 1990. Bryant specifically stood for the proposition that talismanic incantations of prescripted recipes, if you will, do not have to be made. The Nevada Supreme Court said in that Bryant case we don't require talismanic phrasing because the U.S. Supreme Court has never required talismanic phrasing. Now, I agree with Mr. Lambros that under the facts of that case, they were dealing with whether or not the defendant understood the crime. And it was not dealing with this probation issue. But the Nevada Supreme Court in more general language, and I think it's part of this as Wiggins, Skinner, Little line of cases specifically said, neither us nor the U.S. Supreme Court has ever required talismanic phrasing. I think when the district court judge said to Mr. Little, on the minimum side, you would have to serve at least 10 if the two life sentences ran concurrently before you'd be eligible for parole to understand this, and he said yes. In the same hearing after the plea had been taken, when they were arguing, the district attorney and the defense attorney were arguing about the custody status of Mr. Little. Prior to the end of this hearing and at this comment, there was no objection by Mr. Little or no question by Mr. Little or his attorney. The prosecutor at that point in time requested a remand to custody and said he should be remanded because he is going to spend the rest of his natural life in prison based on his plea. And again, there's silence. So although I'm not, my argument is not that silence is acquiescence in this kind of case, but the fact that there was no comment or question from the defense at that point in time showed that Mr. Little understood that he was absolutely going to prison based on what the court had said. Well, that's really sort of beside the point. I mean, if the rule is you've got to advise, and that's the rule that the Valley Supreme Court adopts as to everybody except Mr. Little, it doesn't matter what he actually knew. I mean, if there's a line of cases before and afterwards, and I know you dispute this. If there's a per se rule, I would agree with you. So the fact that he in his mind knew or there's evidence in you, he's not a quiet object, and it doesn't matter what's in his mind, because you have a per se rule. That's what per se rules are about, is that you have prophylactic rules. And so the question really gets down not to what's in his mind. The question is was he either told that in one way or the other, was he in fact warned? Was there a compliance with a supposed requirement that he be told parole is not possible? I think that's hard to find on this record. I think it really is, because all the times he is told you're going to spend 10 years in prison, it is part of a longer sentence that says if you go to prison it's going to be at least 10 years. And what's more, the Nevada Supreme Court didn't say, well, the reason we're not applying it to you is because you in fact knew. There wasn't any kind of factual finding in this case somehow different from the other ones. So we really have to sort of look at the problem as opposing counsel presented it. I think you don't take the position that the Nevada Supreme Court or any Supreme Court can have a series of cases that applies one rule and then it gets to a particular party and says, you know, we don't like this guy's face, so we're going to apply a different rule. Absolutely. You agree that that would violate something? Yes, absolutely. But fortunately that didn't happen in this case. Oh, no, I understand. It did not happen, but that's... But at the same time, though, I agree with what I'm hearing as a concern of the members of the panel, that courts have to have room to allow the law to evolve. I mean, the U.S. Supreme Court has made major changes in the law in the last 10 years, overthrowing years and years of cases. Crawford v. Washington is the best example, when they overruled Ohio v. Roberts, Roberts v. Ohio, and lots of other cases in the capital context. Courts need some space. Although, depending on which way the court goes, you may just not have an equal protection violation if you get a rule that is more favorable to defendants. Sure. And there can't possibly be a claim of equal protection as to at least the people that get the benefit of the more generous rule. But let's say that next term, with changes in composition of the court and greater wisdom that's come down, they go back and they say Crawford was really stupid. Nobody understands it. I don't. I mean, you know, every time I read it, I sort of see less understanding. Let's say they decide, you know, that was sort of a nice try, but no, it doesn't work. We're going to go the other way. We decide it. Back to Roberts. Back to Roberts, yeah. No problem there. Well, aside from, you know, I don't know. It's an interesting question. Aside from the Teague issues. No, no. I understand. There might be other problems. I understand as far as equal protection is concerned. Let me point out one difference, I think, that the panel had had. In the Skinner case, and I disagree with counsel that Skinner is Little's case, because in the Skinner case, the Nevada Supreme Court pointed out, and I'm on page 51 of that decision itself, what they said was, the state argued Skinner knew probation was not available because the plea agreement said he understood that he could be prisoned for a period of not less than five years. And I've underlined the word could. Nothing in there even close to when the judge here said you would have to serve at least ten years. And that's pretty stark language. I would also point out that in Meyer, a combination in my view, a combination of Meyer's, the state Meyer's case, not Meyer's v. Ilse, but the state Meyer's case and Bryant control, because they were both immediately prior to, the two cases immediately prior to the plea in 1990 here. What they specifically said was, and again, even in Meyer's, there's no requirement for talismanic phrasing on how it is that the record has to disclose that the defendant knows, only that he knows that the sentence is not probationable. They said, therefore, when an offense is nonprobationable, the district judge has a duty to ensure that the record discloses that the defendant was aware of that fact. And then they say, failure to adequately inform Meyer of the consequences of his plea created a manifest injustice. What the Supreme Court had not said in Meyer or as Wiegand or Skinner was how the record has to disclose that fact. Now we jump to Little, which was on Judge Hagan's certified issue in 2001, Little v. Warden. They did not overrule Meyer as Wiegand. They clarified the issue. What they said was to the extent that those cases hold that in Nevada, as a matter of Nevada law, a criminal defendant has to know a nonprobationable crime is nonprobationable. We uphold those decisions. We overturn them only to the extent that they imply my term, not theirs, but that they imply that there's some kind of talismanic issue, talismanic phrasing. In Nevada, there is one reasonable doubt instruction judges are allowed to give, and that's talismanic because the Nevada Supreme Court has said you've got to use the one in the statute. You cannot deviate from it at all. The Nevada Supreme Court recently did the same thing when they crafted new jury instructions for the issue of premeditation and deliberation when they separated those issues a little bit in a case called Byford, and they told the district courts of the state this is the instruction you will use, and they gave them a script that they had to read. In Meyer, as Wiegand and in Skinner, they did not do that, and I think it's instructive where there is more flexibility here, and you can see that because they did not say, they didn't create a scripted talismanic script to read from and say this is what you must do. All they said in Meyer was the record, the district judge has to ensure that the record discloses that he was, the defendant was aware of that. Doesn't say who, doesn't say how. It's a pretty flexible standard under state law, and because of that flexibility, I'd argue you don't have an egregious departure, and that's the language that Judge Hagan used. In order to have an equal protection argument here, you've got to have a pretty egregious departure, and he said it wasn't egregious, it was disparate treatment that was rational because little knew, little was informed under Meyer, under, as Wiegand, that this crime was nonprobational. So based on that, we think the equal protection argument must fail. Can I ask you a question? Yes, sir. What do you think that the Riker, the Riker case decided in 1995 adds to the discussion of anything? I think it adds little because it occurred after the fact. It was a little bit of a modification. I think it was an attempt by the Nevada Supreme Court to meld, if you will, Bryant, explicitly meld Bryant and Myers, but I'd be a little concerned going after the fact because technically I think the better argument, I'm in an awkward position, the better argument I think for the other side is that existing case law was violated. Oh, absolutely. I was just trying to when I was looking at these cases in the line of cases it seems like we have the S. Wiegand case, we have the Skinner case, I'm sorry, we have the Meyer case, the Meyer case is 79, S. Wiegand is 85, we then have the Bryant v. State case which is 86 which is immediately preceding the entry of plea in this case. Then the next case that I see that comes along is Riker in 95 which again talks about the totality of circumstances and then of course we get to Skinner in 1997 which seems to go back to the per se rule as best as I can tell. But it almost seems like the Nevada Supreme Court was sort of in a state of flux. They weren't quite sure which rule necessarily they were going to apply during this whole period of time. Perhaps in a state of flux but perhaps I think simply reflecting the flexibility of the test. I think the primary case, the best case that Little has in his arsenal is Meyer because that's the initial case here and I think it's very instructive that Meyer does not set out any talismanic phrasing. That's a key issue. When the Nevada Supreme Court wants talismanic phrasing, they're real blunt and in this case there wasn't any and so I think I don't think Meyer is inconsistent with Bryant. I think if you read both of those in peri materia both occurring immediately prior to the plea here in 1990 I don't see an equal protection violation. Well, part of what complicates this case is that the claimed violation here doesn't have to do with the fact finding process. It really is a sort of procedural issue. What if we had the same situation or the same kind of claim but now it had to do with this reasonable doubt instruction? Let's say there were a series of cases from the Supreme Court  you've got to  tariffs manically. It's the statutory definition. Right. And then you had a case where the judge deviated from that and the court said good enough and then you had another series of cases where they said no no you really conceded. They better find harmless error under Chapman and it better be I would suggest and I may be back here arguing that case I don't know and I have no doubt I'll get this back but they better find harmless error under Chapman and it better be pretty clear. Would they have to have a rational basis to distinguish the two circumstances? If there's no rational basis you would lose on a If there's I what Judge Hagen held in this case and I would agree with him in citing the he cited Bowie he his holding down in the district court U.S. District Court was that the flexibility that that courts need to to develop the law and to address cases you know the law obviously has to evolve as it's been doing at breakneck speed in the last 20 years on constitutional issues certainly and in this case my argument not only is that there is no egregious departure but that there was no departure because Meyer doesn't say how the record has to indicate only that it does and that was a finding by the Supreme Court under the EDPA standard of Packer versus Early in that whole line of cases the Nevada Supreme Court made a finding that that Little was sufficiently informed and in order to violate the EDPA standard under 2254d that has to be unreasonable not just wrong but that's got to be unreasonable which is a higher standard we don't think they've met that standard okay thank you thank you much you want to clarify one point that Mr. Schulze made just to get back to the original question from Judge Silverman about Skinner and Mr. Little Mr. Schulze points out the language in Skinner that the plea memo said that he could be in prison for a period of not less than 5 years this is no different this is no different than if you look at page 353 of my excerpts at lines 17 and 18 the court there said so that could be a minimum sentence of 20 years again there was nothing in there that advised Mr. Little that it would have to serve at least 10 if the two life sentences ran concurrently before you'd be eligible for parole right and that assumes that if the two life sentences were to run concurrent and to me that's just a follow up of the admonition that the court had given Mr. Little earlier and that it was not going to be a done deal the court later on in its canvas talks about whether or not any promises were made and in pages 355 and 356 lines 23 through 25 Mr. Little and this is just a rote question that always gets asked at a plea hearing but this question was aside from these negotiations has anyone made any promises of a lesser sentence probation that kind of thing so there was certainly no there wasn't as was required by Aswegen and on the record canvas there certainly wasn't as was required by Skinner something in the record that affirmatively demonstrated that he was told probation was not available again Brian is in a posit because Brian itself at footnote one said we are not arranged punishment they said we were nature of the charges case that's all we are Little versus Warden in 2001 overruled both of those cases okay thank you thank you so much for my extra time uh cases are able to
judges: Kozinski, Silverman, Benitez